## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 04 2015, 9:46 am
CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| **APPELLANT *PRO SE*** | **ATTORNEYS FOR APPELLEE** |
| Alan Patrick McEntee | Timothy J. Abeska |
| Knox, Indiana | Barnes & Thornburg LLP |
| | South Bend, Indiana |
| | Alice J. Springer |
| | Barnes & Thornburg LLP |
| | Elkhart, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alan Patrick McEntee, | November 4, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 75A03-1502-MF-51 |
| v. | Appeal from the Starke Circuit Court |
| Wells Fargo Bank, N.A., | The Honorable Kim Hall, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 75C01-1005-MF-71 |

**Bradford, Judge.**

# Case Summary

[1]     In 2003, Appellant-Defendant Alan McEntee purchased a home and executed a promissory note and mortgage, which were eventually assigned to Appellee-Plaintiff Wells Fargo Bank, N.A. McEntee sent Wells Fargo a post-dated check for his January 2009 house payment, which Wells Fargo negotiated before the date on the check, causing McEntee to incur fees. The resulting dispute between McEntee and Wells Fargo culminated in Wells Fargo filing a foreclosure action in May of 2010. The trial court eventually granted summary judgment in favor of Wells Fargo on its foreclosure claim and on McEntee's counterclaims, which were, generally, that any default on his part was due to improper actions by Wells Fargo. McEntee appealed, and we reversed, concluding that Wells Fargo had failed to designate sufficient evidence to establish a default by McEntee and that McEntee had designated sufficient evidence to generate a genuine issue of material fact as to his counterclaims.

[2]     On remand, Wells Fargo sought a determination that there was no counterclaim available to McEntee based on his alleged payment dispute, attempts to make set-off payments, attempts to change the payment terms, and pain and emotional distress. The trial court entered judgment in favor of Wells Fargo on this issue, which judgment McEntee did not appeal. Wells Fargo moved for summary judgment on the foreclosure claim, designating an affidavit from a Wells Fargo vice president of loan documentation indicating that she had personally examined the relevant business records (which were attached) and that McEntee was in default. The trial court granted Wells Fargo's motion and entered judgment in the amount of $102,422.51. McEntee appeals,

claiming that Wells Fargo has failed to establish the lack of a genuine issue of material fact. Because we disagree, we affirm.

# Facts and Procedural History

[3] The background for this appeal was outlined by this court in *McEntee v. Wells Fargo Bank, N.A.*, 970 N.E.2d 178 (Ind. Ct. App. 2012):

> On August 4, 2003, McEntee borrowed $73,000 from USB Home Lending, a Division of Universal Savings Bank, F.A. ("USB Home Lending"). The note for the loan required that McEntee make monthly payments of $467.43. (Appellant's App. at 29.) The loan was secured by a mortgage, which McEntee executed on August 4, 2003. At some point prior to the relevant events of this case, Wells Fargo became the servicer on the loan for USB Home Lending.
>
> At some point, McEntee submitted a check to Wells Fargo for his January 2009 mortgage payment. The check was postdated to the payment due date, but Wells Fargo negotiated the check before that date. While it does not appear that McEntee's check was returned for insufficient funds, payment of the check resulted in checking account overdraft fees to McEntee of $112.50.
>
> McEntee engaged in efforts to obtain compensation from Wells Fargo for the overdraft fees. This appears to have escalated into a dispute over the proper place for McEntee to make payments; whether certain payments were made late; and whether McEntee could deduct amounts for the overdraft fees, mileage to deliver a payment to a Wells Fargo bank branch, and a "premature check cashing" fee. Appellant's App. at 5.
>
> On June 10, 2009, McEntee sent a letter to Mark Oman, then an executive for Wells Fargo in Des Moines, Iowa, that included two checks to Wells Fargo for McEntee's May 2009 and July

2009 mortgage payments. From the July 2009 payment, which was to total $664.98, McEntee deducted his claimed expenses for travel ($11.50), overdraft fees ($112.50), and the overdraft fee associated with "premature check cashing" ($22.87). Thus, McEntee's check for his July 2009 payment was $518.11, which he postdated to July 1, 2009.

By September 2009, McEntee's dispute with Wells Fargo remained unresolved. Thus, on September 23, 2009, McEntee sent a letter to Ben Windust, another executive for Wells Fargo. Stating that "[t]here has been no reply to date regarding the problems," McEntee submitted with the letter a check for his October 2009 payment in the amount of $700.00, which he specified was to cover the $664.98 monthly payment and additional principal of $35.02 "plus $0.02 from previous month not allocated." Appellant's App. at 7. The check was postdated to October 1, 2009, and McEntee indicated that he would assess a $100.00 fee "deductible from a future payment" if Wells Fargo "[p]remature[ly] deposit[ed]" the check. Appellant's App. at 7.

McEntee's relationship with Wells Fargo continued to deteriorate. Eventually, Wells Fargo returned two of McEntee's checks (for the July 2009 and January 2010 payments) and informed McEntee that it planned to foreclose on the mortgage. On April 27, 2010, USB Home Lending assigned its interest in the mortgage and conveyed the promissory note for the loan to Wells Fargo.

On May 13, 2010, Wells Fargo filed its Complaint to Foreclose Mortgage against McEntee.

On June 7, 2010, McEntee answered the complaint, denying Wells Fargo's allegation that he had defaulted on the loan. McEntee also asserted several counterclaims. McEntee alleged that Wells Fargo failed to apply properly his payments, and requested damages "for all costs associated with this suit, plus all money not properly attributed by the Plaintiff." Appellee's App. at 35. McEntee also asserted a counterclaim for $73,000 "for

emotional pain and suffering and all ancillary costs," claiming that Wells Fargo "has used its size and power in an effort to intimidate [McEntee] to accept extra costs that are not his responsibility." Appellee's App. at 35. McEntee's answer and counterclaims were accompanied by a "Defense History" that set forth an alleged timeline of events. These included McEntee's recounting of the payment history and Wells Fargo's refusal to recognize certain payments as having been made, and McEntee's claim that Wells Fargo in August 2009 sent him a check for $125.00 to cover his overdraft fees.

On June 10, 2010, Wells Fargo answered and moved to dismiss McEntee's counterclaims.

On January 21, 2011, Wells Fargo filed its motion for summary judgment against McEntee as to its complaint and McEntee's counterclaims. On February 2, 2011, McEntee filed his response to Wells Fargo's motion for summary judgment.

The trial court conducted a hearing on Wells Fargo's motion for summary judgment on April 25, 2011. On April 26, 2011, the trial court entered summary judgment in favor of Wells Fargo and against McEntee on Wells Fargo's complaint for foreclosure and McEntee's counterclaims.

On May 20, 2011, McEntee filed his motion to correct error, subtitled as a motion to reconsider. Wells Fargo filed its response to the motion on May 31, 2011. The trial court denied McEntee's motion to correct error on June 10, 2011.

*Id.* at 180-81 (footnote omitted).

[4] McEntee appealed from the trial court's denial of his motion to correct error. On June 19, 2012, we issued our opinion, in which we concluded that a genuine issue of material fact existed as to default, McEntee did not admit default, a genuine issue of material fact existed as to whether Wells Fargo

improperly handled McEntee's payments, and McEntee's counterclaim for pain and suffering was not properly before the trial court for disposition on summary judgment. *Id*. at 185.

[5] On October 2, 2013, Wells Fargo moved for summary judgment on McEntee's counterclaims related to his alleged payment dispute with Wells Fargo, attempts to make set-off payments, attempts to change the payment terms, and pain and emotional distress. On March 25, 2014, the trial court granted Wells Fargo's motion for summary judgment on McEntee's counterclaims. McEntee did not appeal this entry of judgment.

[6] On July 28, 2013, Wells Fargo moved for summary judgment on its foreclosure claim. *Inter alia*, Wells Fargo designated an affidavit from Kimberly Mueggenberg, a vice president of loan documentation at Wells Fargo. Mueggenberg averred that she was familiar with Wells Fargo's business records, it is the regular practice of Wells Fargo to make records concerning payments made on loans secured by mortgages, and she acquired personal knowledge of the matters stated in her affidavit through examination of relevant records. Mueggenberg included a copy of the payment history on McEntee's loan from August of 2003 to April 9, 2014. Mueggenberg averred that McEntee defaulted pursuant to the terms of the promissory note by failing to tender payments when due and that the loan remained in default from the January 2010 payment forward. On October 16, 2014, the trial court granted summary judgment in favor of Wells Fargo. On November 13, 2014, McEntee filed a motion to correct error, which the trial court denied on January 14, 2015.

# Discussion and Decision

## Standard of Review

[7]     When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id*.; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id*. Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id*. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id*.

## Whether the Trial Court Erred in Granting Summary Judgment in Favor of Wells Fargo

[8]     McEntee argues that Wells Fargo has failed to designate evidence sufficient to establish that there is no genuine issue of material fact as to him being in default of the mortgage loan. McEntee argues that Well Fargo's designated evidence is self-serving, and apparently therefore incapable of supporting a summary judgment in favor of Wells Fargo, and that the trial court failed to consider

documents he designated which he claims generate a genuine issue of material fact as to default.

[9] "[I]f a mortgagor defaults in the performance of any condition contained in a mortgage, the mortgagee or the mortgagee's assigns may proceed in the circuit court of the county where the real estate is located to foreclose the equity of redemption contained in the mortgage." Ind. Code § 32-30-10-3. Default on a mortgage loan can be established by designating "into evidence the demand note and the mortgage[,]" *Creech v. LaPorte Prod. Credit Ass'n*, 419 N.E.2d 1008, 1012 (Ind. Ct. App. 1981), and evidence, beyond a mere conclusory statement, of default. *See McEntee*, 970 N.E.2d at 183.

[10] Wells Fargo designated the mortgage and an affidavit in support of judgment, as well as an affidavit of attorney fees, costs, and expenses. The designated evidence indicates that Wells Fargo is the holder of the promissory note, and the mortgage instrument clearly contemplates payment of each installment in full when due, and provides for acceleration and/or foreclosure upon default.

[11] Wells Fargo's designated affidavit from Mueggenberg indicates that she is a vice president of loan verification for Wells Fargo who inspected McEntee's records personally. Mueggenberg's affidavit and attached records indicate that McEntee was two months behind in his payments as of February of 2010, as his payment for that month was applied to his payment for December of 2010. This designated evidence goes far beyond a conclusory statement of default.

Consequently, we conclude that Wells Fargo has designated ample evidence to establish an uncured default for summary judgment purposes.

[12] Moreover, McEntee has failed to generate a genuine issue of material fact regarding whether he had a defense to the foreclosure action. As previously mentioned, the trial court granted summary judgment in favor of Wells Fargo on the issue of McEntee's counterclaims, which were essentially that he was relieved of the obligations contained in the note and mortgage because of his conflict with Wells Fargo and that he was entitled to unilaterally alter the terms of payment. Even if we were to assume that McEntee's counterclaims might have had some merit, he did not appeal the trial court's entry of summary judgment and they are therefore not before us. In any event, it is clear that a dispute with Wells Fargo would not excuse noncompliance with the note or mortgage. As the mortgage makes abundantly clear, "No offset or claim that which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument[.]" Appellee's App. p. 22. We conclude that Wells Fargo has designated sufficient evidence to establish McEntee's default and that McEntee has failed to designate any evidence that might excuse it.

[13] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.