# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JOEL F. BORNKAMP**
Reisenfeld & Associates
Cincinnati, Ohio

ATTORNEY FOR APPELLEE:

**SHAUN T. OLSEN**
Law Office of Weiss & Schmidgall, P.C.
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE, LLC, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1211-MF-469 |
| JEFFREY A. CURATOLO, et al., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Calvin Hawkins, Judge
Cause No. 45D02-1109-MF-297

**June 18, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Nationstar Mortgage, LLC ("Nationstar"), appeals the trial court's order modifying its mortgage agreement with Jeffery A. Curatolo. We find the following restated issue dispositive: whether the trial court had the authority to modify the mortgage agreement without consent of both parties. Concluding the trial court lacked the authority to do so, we reverse and remand.

## Facts and Procedural History

In August 2006, Curatolo executed and delivered a promissory note and mortgage, promising to pay $245,000.00 plus interest and granting a security interest in the mortgage property, to Bancgroup Mortgage Corporation. Paying interest at the rate of 6.5% and over the term of thirty years, the monthly payment was $1,548.57. The mortgage was eventually assigned to Nationstar in 2010. Nationstar filed its complaint on note and to foreclose mortgage on September 19, 2011, alleging that Curatolo was in default pursuant to the terms of the note and mortgage after March 1, 2010.

Curatolo did not answer the complaint, but, rather, requested a mortgage foreclosure settlement conference. A series of settlement conferences and status hearings took place.[1] An order following a settlement conference that took place on January 12, 2012, indicated that Nationstar presented Curatolo with a three-month forbearance plan. The court ordered Nationstar to prepare a permanent modification plan after receipt of the third payment and the court set the matter for an additional status hearing on April 12, 2012. An order

---

[1] It appears that a total of five settlement conferences took place.

2

following the April 12th settlement conference indicated that Curatolo had successfully completed the three-month plan but that Nationstar "now request[s] that [Curatolo] submit fresh financial documents . . . because of a discrepancy in [Curatolo]'s stated income. [Nationstar] has demonstrated consistent absence of good faith in their negotiations . . . ." Appellant's Appendix at 14. A hearing was held on June 14, 2012, on "Mortgage Foreclosure Facilitator's Petition for Sanctions,"[2] and the trial court issued an order the next day, finding the following:

> (a) That [Curatolo] has substantially complied with all requisites relating to making payments to [Nationstar] over a three month trial period.
> (b) That [Nationstar] consistently raises additional issues in the negotiation process notwithstanding the fact that [Curatolo] timely makes his mortgage payments.
> (c) That [Nationstar]'s conduct in the negotiation process borders on bad faith and should be sanctioned.
> (d) That the herein Court shall withhold sanctions and allow the parties an opportunity to effectuate a fair and equitable modification.
> (e) That [Curatolo] shall commence making monthly mortgage payments to [Nationstar] in the sum of $1,632.83, the first payment due on or before July 1, 2012 and each month thereafter for a five month period.
> (f) That if, during the hereinbefore mentioned five month period, [Curatolo] makes timely payments and [Nationstar] fails to act in good faith, the Court will establish a modification program for the parties.
> (g) That the Court sets this matter for a status hearing on the 2nd day of August, 2012, at 1:30 p.m.

Id. at 11-12. After the August 2nd settlement conference and status hearing, Nationstar requested an additional thirty days to review the documents submitted by Curatolo.

A final "status conference" took place on October 11, 2012, and the court issued an order, finding the following:

---

[2] This "petition" does not appear in the record before us, nor is there a mention of it in the docket sheet.

a. That the parties have undergone a series of loan modifications during the pendency of this action.

b. That [Curatolo] has consistently made timely payments and kept himself current pursuant to the terms of said loan modifications.

c. That [Nationstar] has consistently imposed additional requisites on [Curatolo] and the Court deems same as bad faith maneuvers designed to thwart [Curatolo] from maintaining his residence and making payments on same.

d. That in the herein hearing [Nationstar] proposed another trial period in which [Curatolo] was to pay an additional Three Hundred ($300.00) Dollars for a three month period, said proposal the Court deems as another bad faith maneuver.

e. That as a result of [Nationstar]'s bad faith [Nationstar] is denied attorney fees and penalty fees.

f. That the Court finds that there is an unpaid balance on the mortgage note of Two Hundred Thirty Four Thousand Twenty Eight ($234,028.59) Dollars and Fifty Nine Cents.

g. That the Court hereby modifies the mortgage agreement between the parties by ordering [Curatolo] to pay principle and interest to [Nationstar] in the sum of One Thousand Six Hundred Thirty Two ($1,632.83) Dollars and Eighty Three Cents per month commencing November 1, 2012 and for a like period thereafter for fifteen years.

h. That the interest rate on said mortgage shall be at the rate of three (3%) percent.

i. That either party or the mortgage facilitator may petition the Court for a hearing if either party fails to abide by the terms of the herein order.

Id. at 7-8. Nationstar now appeals. Additional facts will be provided as necessary.

Discussion and Decision

In response to the mortgage foreclosure crisis, the Indiana legislature passed Indiana Code chapter 32-30-10.5 to "avoid unnecessary foreclosures" and facilitate "the modification of residential mortgages in appropriate circumstances." See Ind. Code § 32-30-10.5-1(b). Under this chapter, upon filing a foreclosure action, a creditor must generally give a debtor notice of his or her right to participate in a settlement conference, and the debtor has thirty days to notify the court if he or she intends to partake in such a conference. Ind. Code § 32-

4

30-10.5-8(c). "If, as a result of a settlement conference held under this chapter, the debtor and creditor agree to enter into a foreclosure prevention agreement," the foreclosure may be dismissed or stayed as long as the debtor complies with the terms of the agreement. Ind. Code § 32-30-10.5-10(e). This case raises the question of whether a trial court has the authority to modify a mortgage agreement without the consent of both parties if they fail to agree to the terms of a foreclosure prevention agreement. We hold that it does not.

Here, Curatolo requested and the court scheduled a settlement foreclosure conference. Several settlement conferences were ultimately conducted and while the parties initially agreed to a three-month forbearance plan, which Curatolo successfully completed, they were unable to reach a final agreement. The statute is clear that its aim was to "modify the foreclosure process to <u>encourage</u> mortgage modification alternatives." Ind. Code § 32-30-10.5-1(a)(3) (emphasis added). The statute does not make it mandatory on creditors and debtors to enter into foreclosure prevention agreements. In fact, if the statute had purported to do so, it would likely run afoul of the constitutional prohibition on the impairment of contractual obligations. <u>See</u> Ind. Const. art. 1, § 24 ("No <u>ex post facto</u> law, or law impairing the obligation of contracts, shall ever be passed."); <u>see also</u> <u>Wencke v. City of Indianapolis</u>, 429 N.E.2d 295, 298 (Ind. Ct. App. 1981) ("A retrospective application of a statute to a contract entered into before the effective date of that statute can impair contractual obligations contrary to both the United States and Indiana Constitutions.").

And while the statute gives the trial court the right to stay the foreclosure action pending the negotiation process, Ind. Code § 32-30-10.5-8.5(b), and the right to issue a

5

provisional order requiring the debtor to continue to make monthly payments if he or she continues to occupy the dwelling while the foreclosure action is pending, Ind. Code § 32-30-10.5-8.6(b),[3] nowhere does the statute give a trial court the authority to enter a final order modifying the mortgage agreement. The fact that the legislature itself could not have impaired the contractual obligations of the parties lends further support to our conclusion it did not intend to give the courts that authority. Because the mortgage agreement was based upon the parties' mutual assent, they must both agree to any permanent modification. See, e.g., Voigt v. Voigt, 670 N.E.2d 1271, 1279-80 (Ind. 1996) (holding that a court lacked the statutory authority to modify a maintenance award based on a settlement agreement where the court had no authority to impose that kind of maintenance award "because the sole authority for the maintenance obligation originally derived from [the parties'] mutual assent"). In fact, the statute sets forth that the "foreclosure action filed by the creditor may proceed as otherwise allowed by law" if "as a result of a settlement conference held under this chapter, the debtor and the creditor are unable to agree on the terms of a foreclosure prevention agreement." Ind. Code § 32-30-10.5-10(f). Thus, the trial court acted in excess of its authority when it ordered the modification.

Nor is this a case where the court was merely interpreting or enforcing a previously entered into agreement. Generally, when interpreting mortgage agreements, courts are bound

---

[3] In fact, while the statute states that the court "shall" determine the amount of monthly payment required of the debtor for purposes of the provisional order, it explicitly sets forth that the amount "may not exceed the debtor's monthly obligation under the mortgage at the time the action is filed." Ind. Code § 32-30-10.5-8.6(b). Here, the monthly payment in both the court's provisional order dated June 15 and in the court's final order modifying the mortgage agreement dated October 11 exceeded the monthly obligation at the time the action was filed.

to give effect to the plain meaning of the language of the mortgage. First Fed. Sav. and Loan Ass'n of Gary v. Stone, 467 N.E.2d 1226, 1233-34 (Ind. Ct. App. 1984), trans. denied. "It is not within the province of a court to make a new contract for the parties or to ignore or eliminate provisions of the instrument." Id. at 1234. Curatolo concedes this point and instead argues that the modification was a proper sanction for Nationstar's misconduct.[4] Trial courts have the inherent power to impose sanctions on parties and attorneys for "discovery violations, contempt, and the government's wrongful conduct." Allied Prop. and Cas. Ins. Co. v. Good, 919 N.E.2d 144, 153 (Ind. Ct. App. 2009) (holding that courts have the inherent power to sanction parties for intentionally violating motions in limine and causing a mistrial), trans. denied. The purpose of this power is to protect the integrity of the judicial system and to secure compliance with the court's rules and orders. Id. at 154. Here, however, the only court orders Nationstar allegedly violated relate to the trial court's attempts to impose a foreclosure prevention agreement on the parties. As we conclude above, a creditor is under no obligation to enter into a foreclosure prevention agreement with a debtor, ill-advised as its refusal to do so may be. And while the trial court found that Nationstar's behavior evidenced bad faith, we cannot agree that requesting additional documentation in response to a change of income or requesting an additional $300 per month from Curatolo was bad faith. Curatolo was not entitled to a final foreclosure prevention agreement with

---

[4] Curatolo also contends that Nationstar waived appellate review of this issue because it regarded the trial court order as an order for summary judgment rather than an order for sanctions as he chose to do. We find that Nationstar's discussion of the issue properly preserved it for appeal and there was no waiver.

Nationstar, in turn, argues that its due process rights were violated because it was not properly notified that a final judgment and sanction would be issued at the October 11 "status conference." In light of our conclusion that a sanction was improper in this case, we need not address this issue.

7

terms to his liking.  And even if the parties had agreed upon a final agreement, the statute sets

forth that the foreclosure shall be dismissed or stayed "[a]t the election of the creditor."  Ind.

Code § 32-30-10.5-10(e) (emphasis added).  In sum, the trial court did not have the authority

to modify the mortgage agreement without consent of the parties and we reverse its order

doing so and remand this case to the trial court with instructions to allow the foreclosure

action to proceed.[5]

Conclusion

The trial court did not have the authority to permanently modify the mortgage

agreement entered into between the parties without their consent.  We therefore reverse its

order and remand for further proceedings consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., and CRONE, J., concur.

---

[5] Our decision should not be read to limit the ability of the parties to enter into a mutually agreed upon foreclosure prevention agreement.  In that case, the trial court may dismiss or stay the foreclosure as provided by Indiana Code section 32-30-10.5-10(e).